```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------X
KEVIN SEXTON,
                                              MEMORANDUM & ORDER
                Plaintiff,                    15-CV-2313(KAM)(LB)

        -against-

MEDICARE,

                Defendant.
----------------------------------X
```
**MATSUMOTO, United States District Judge**:

Plaintiff Kevin Sexton ("plaintiff") seeks to prevent the Secretary of the United States Department of Health and Human Services ("HHS" or "defendant")[1] from pursuing reimbursement directly against plaintiff for payments Medicare made on his behalf to medical providers after he suffered an accident. Pending before the court is defendant's motion to dismiss for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1). Because the court lacks subject matter jurisdiction over plaintiff's claim, defendant's motion to dismiss is GRANTED.

---

[1] In his complaint, plaintiff named "Medicare" as the sole defendant in this action. (*See* Compl. at ¶ I-B.) The Secretary of HHS, however, is the real party in interest. *See, e.g.*, *Schwartz v. Medicare*, 832 F. Supp. 782, 783 n.1 (D.N.J. 1993) ("Although the named defendant in this case is Medicare, pursuant to 42 C.F.R. § 421.5(b), the United States is the real party in interest in any matter involving the administration of the Medicare Program."); *Wright v. Sebelius*, 818 F. Supp. 2d 1153, 1155 (D. Neb. 2011) (substituting HHS secretary for named defendant where named defendant was a private contractor collecting secondary payment reimbursements on behalf of Medicare).

## BACKGROUND

The following facts derive principally from the complaint and an affidavit submitted on behalf of defendant by an HHS administrator.[2] On December 6, 2014, plaintiff was struck by a distracted driver in the Bronx. (*See* ECF No. 2, Complaint ("Compl.") ¶¶ III-A-C.) According to the complaint and an attached police report, the driver of the other car was a licensed taxi or limousine driver insured by American Transit Insurance Company.[3] (*Id.* ¶ III-C, Ex. 1.) Plaintiff alleges that he suffered injuries including fractures of his tibia and fibula as a result of the accident, and had a rod placed in his leg. (*Id.* ¶ IV.)

Because plaintiff was a Medicare beneficiary, Medicare paid certain medical expenses — related to the December 6, 2014 accident — for plaintiff's treatment in December 2014 and March 2015. (*Id.* ¶¶ III-C, V; ECF No. 12-3, Declaration of Victoria Abril

---

[2] "In resolving a motion to dismiss under Rule 12(b)(1), the district court must take all uncontroverted facts in the complaint (or petition) as true, and draw all reasonable inferences in favor of the party asserting jurisdiction." *Tandon v. Captain's Cove Marina of Bridgeport, Inc.*, 752 F.3d 239, 243 (2d Cir. 2014). Where subject matter jurisdiction is disputed, however, a court may look beyond the pleadings. *See Ray Legal Consulting Grp. v. Gray*, 37 F. Supp. 3d 689, 696 (S.D.N.Y. 2014) ("[W]here subject matter jurisdiction is contested a district court is permitted to consider evidence outside the pleadings, such as affidavits and exhibits.").

[3] "Under New York's Comprehensive Motor Vehicle Insurance Reparations Act, every car owner must carry automobile insurance, which will compensate injured parties for basic economic loss occasioned by the use or operation of that vehicle in New York State, irrespective of fault." *Watson-Tobah v. Royal Moving & Storage, Inc.*, No. 13-CV-7483, 2014 WL 6865713, at *10 (S.D.N.Y. Dec. 5, 2014) (internal quotation marks, citations, and alterations omitted).

("Abril Decl.") at ¶¶ 5, 8; Abril Decl., Exs. A-B; ECF No. 18.) On February 3, 2015, the Centers for Medicare and Medicaid Services ("CMS"), which administers Medicare on behalf of HHS, sent plaintiff and his attorney a letter notifying him that Medicare had conditionally paid medical expenses totaling $678.60 for treatment of his accident-related injuries. (Abril Decl., Ex. A.) The February 3, 2015 letter stated that plaintiff "may be required to reimburse Medicare for medical expenses." (*Id.*) The letter was clear, however, that plaintiff was not yet being billed. The letter provided, in bold type: "THIS IS NOT A BILL. DO NOT SEND PAYMENT AT THIS TIME."[4] (*Id.*)

Following his receipt of CMS's February 3, 2015 letter, plaintiff filed the instant action seeking to compel Medicare "to recover the funds from American Transit Ins. Co. or from the providers that Medicare knowingly paid by mistake instead of from" plaintiff. (Compl. at ¶ V.) Defendant subsequently served a motion to dismiss on plaintiff, which plaintiff did not timely oppose. (*See* ECF No. 10; ECF No. 12-2, Defendant's Memorandum in Support of Motion to Dismiss ("Def. Mem.").) After defendant's motion was filed, the court provided plaintiff with additional time to file an opposition. (Docket Entry dated 9/22/2015.) When plaintiff

---

[4] On June 10, 2015, CMS sent a fundamentally identical letter to plaintiff and his attorney identifying $25,262.15 in additional, conditional payments for medical expenses arising from plaintiff's December 6, 2014 accident. (Abril Decl., Ex. B.) Further payments have since been made by Medicare on plaintiff's behalf. (*See* ECF No. 18.)

3

again failed to respond to defendant's motion, the court deemed the motion fully briefed. (Docket Entry dated 10/07/2015; *see also* ECF No. 15.)

Defendant has moved to dismiss this action on two bases. First, defendant argues that plaintiff's claim is not ripe for judicial review because plaintiff has not suffered an actual or imminent injury where defendant's right to collect any purported Medicare overpayments from plaintiff rests on contingent, future events that may not occur. (Def. Mem. at 8-10.) Second, defendant contends that plaintiff failed to avail himself of and exhaust administrative remedies and satisfy the prerequisites to defendant's waiver of sovereign immunity and, thus, the action must be dismissed. (*Id.* at 10-14.) Before addressing defendant's arguments, the court will provide necessary background on the Medicare Secondary Payer Act.

**DISCUSSION**

I. *The Medicare Secondary Payer Act*

"Medicare is a federally funded medical insurance program for the elderly and disabled." *Fischer v. United States*, 529 U.S. 667, 671 (2000). "When first enacted, Medicare paid its beneficiaries' medical expenses, even if beneficiaries could recoup them from other sources, such as private health insurance." *Taransky v. Sec'y of U.S. Dep't of Health & Human Servs.*, 760 F.3d 307, 310 (3d Cir. 2014). To address rising costs, however, Congress

enacted the Medicare Secondary Payer Act (the "MSP Act") in 1980. *See Manning v. Utilities Mut. Ins. Co.*, 254 F.3d 387, 396 (2d Cir. 2001) (describing history of the MSP Act); *see also Bio-Med. Applications of Tennessee, Inc. v. Cent. States Se. & Sw. Areas Health & Welfare Fund*, 656 F.3d 277, 278 (6th Cir. 2011) (same). Under the MSP Act, Medicare serves as the secondary payer when a beneficiary has primary insurance coverage through, for example, a group health plan, a worker's compensation carrier, or no-fault insurance. *See* 42 U.S.C. § 1395y(b)(2)(A); 42 C.F.R. § 411.20(a)(2)(i)-(iii); *Manning*, 254 F.3d at 391.

Where "payment has been made, or can reasonably be expected to be made" for medical expenses under a primary plan, Medicare generally will not pay the medical expenses. 42 U.S.C. § 1395y(b)(2)(A); *see also Woods v. Empire Health Choice, Inc.*, 574 F.3d 92, 95 (2d Cir. 2009). If a primary plan "has not made or cannot reasonably be expected to make payment . . . promptly," however, Medicare may conditionally pay for medical expenses. 42 U.S.C. § 1395y(b)(2)(B)(i). Medicare may later seek reimbursement from a primary plan or an entity that received a payment from a primary plan. *See Bird v. Thompson*, 315 F. Supp. 2d 369, 371 (S.D.N.Y. 2003); *see also* 42 U.S.C. § 1395y(b)(2)(B)(ii) ("[A] primary plan, and an entity that receives payment from a primary plan, shall reimburse [Medicare for medical expenses] . . . if it is demonstrated that such primary plan has or had a responsibility

to make payment . . . ."); 42 C.F.R. § 411.24(b).[5] "A primary plan's responsibility for such payment may be demonstrated by a judgment, a payment conditioned upon the recipient's compromise, waiver, or release (whether or not there is a determination or admission of liability) of payment for items or services included in a claim against the primary plan or the primary plan's insured, or by other means." 42 U.S.C. § 1395y(b)(2)(B)(ii).

As relevant here, the government's right to recoup overpayments permits it to recover directly from beneficiaries who receive primary payments. *See* 42 C.F.R. § 411.24(g) ("CMS has a right of action to recover its payments from any entity, including a beneficiary, . . . that has received a primary payment."). If CMS determines that it has a right of recovery against a beneficiary, the agency will issue an "initial determination" identifying the "recovery claim against a . . . beneficiary for services or items [for which Medicare] already paid." 42 C.F.R. § 405.924(b)(14). CMS's initial determination is administratively appealable. 42 C.F.R. §§ 405.940-978; *see also* 42 C.F.R. §§ 405.1000-1054, 405.1100-1140. After exhausting administrative appeals, a dissatisfied beneficiary may seek judicial review of the Secretary's "final decision." *See* 42 U.S.C. § 405(g); 42 U.S.C.

---

[5] In addition, the government is "'subrogated (to the extent of payment made [by Medicare but required to be paid by a primary plan]) to any right under [the MSP] of an individual . . . to payment . . . under a primary plan.'" *Woods*, 574 F.3d at 95 (alterations in original) (quoting 42 U.S.C. § 1395y(b)(2)(B)(iv)).

6

§ 1395ff(b)(1)(A). "Judicial review of claims arising under the Medicare Act is available only after the Secretary renders a 'final decision' on the claim . . . ." *Heckler v. Ringer*, 466 U.S. 602, 605 (1984).

II. *Plaintiff Lacks a Claim That is Ripe for Adjudication*

Defendant first argues that the court lacks subject matter jurisdiction over plaintiff's action because plaintiff has not suffered an "actual or imminent" injury. (Def. Mem. at 8-10.) Defendant contends that Medicare's claim for reimbursement has not yet accrued because no event has triggered a primary insurer's obligation and plaintiff has not been requested to reimburse the program. Because Medicare may never become entitled to reimbursement from plaintiff, defendant posits, there is no live dispute between the parties. (*Id.*)

Article III, § 2, of the Constitution limits federal jurisdiction to "Cases" and "Controversies." *Genesis Healthcare Corp. v. Symczyk*, 133 S. Ct. 1523, 1528 (2013); *see also DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 341 (2006) ("[N]o principle is more fundamental to the judiciary's proper role in our system of government than the constitutional limitation of federal-court jurisdiction to actual cases or controversies." (internal quotation marks and citations omitted)). The

> irreducible constitutional minimum of standing requires:
> (1) that the plaintiff[s] have suffered an "injury in fact" — an invasion of a judicially cognizable interest

> which is (a) concrete and particularized and (b) *actual or imminent, not conjectural or hypothetical*; (2) that there be a causal connection between the injury and the conduct complained of — the injury must be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court; and (3) that it be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Bennett v. Spear*, 520 U.S. 154, 167 (1997) (emphasis added) (citation omitted); *see also Clapper v. Amnesty Int'l USA*, 133 S. Ct. 1138, 1147 (2013) ("To establish Article III standing, an injury must be concrete, particularized, and actual or imminent; fairly traceable to the challenged action; and redressable by a favorable ruling." (internal quotation marks and citation omitted)). Standing must be established at the time the action is filed. *Azim v. Vance*, 530 F. App'x 44, 45 (2d Cir. 2013) ("[S]tanding is to be determined as of the commencement of suit."); *accord Comer v. Cisneros*, 37 F.3d 775, 791 (2d Cir. 1994). Events that occur after an action is instituted are irrelevant to the standing analysis if standing cannot be established at the outset.

The principal standing issue in the instant action concerns the first standing requirement: an "injury in fact." To satisfy Article III, an "injury in fact" "must be concrete and particularized and actual or imminent, not conjectural or hypothetical." *Susan B. Anthony List v. Driehaus*, 134 S. Ct. 2334, 2341 (2014) (internal quotation marks and citations omitted). "Although imminence is concededly a somewhat elastic concept, it

8

cannot be stretched beyond its purpose, which is to ensure that the alleged injury is not too speculative for Article III purposes — that the injury is *certainly* impending." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 564 n.2 (1992) (internal quotation marks and citation omitted). "It has been stretched beyond the breaking point when . . . the plaintiff alleges only an injury at some indefinite future time . . . ." *Id.* The imminence requirement "ensure[s] that the court avoids deciding a purely hypothetical case in which the projected harm may ultimately fail to occur." *Connecticut v. Am. Elec. Power Co.*, 582 F.3d 309, 343 n.19 (2d Cir. 2009) (internal quotation marks and citation omitted), *rev'd on other grounds*, 564 U.S. 410 (2011); *see also Brito v. Mukasey*, 521 F.3d 160, 168 (2d Cir. 2008) ("Because [the plaintiff] alleges only a potential for [injury] that has not yet occurred and because that potential is born of nothing more than hypothesis and conjecture, [the plaintiff] lacks standing . . . .").

Turning to the MSP Act, although CMS's right of action to recover overpayments against primary insurers accrues "as soon as it learns that payment has been made *or could be made* under workers' compensation, any liability or no-fault insurance, or an employer group health plan," 42 C.F.R. § 411.24(b) (emphasis added); *see also* 42 U.S.C. § 1395y(b)(2)(B)(iii), CMS's right of action against beneficiaries only accrues after the beneficiary has received a primary payment. *See* 42 C.F.R. § 411.24(g) ("CMS

has a right of action to recover its payments from any entity, including a beneficiary, provider, supplier, physician, attorney, State agency or private insurer that has *received a primary payment*." (emphasis added)); *see also* 42 U.S.C. § 1395y(b)(2)(B)(iii) ("[T]he United States may recover under this clause from any entity that has *received payment* from a primary plan or from the proceeds of a primary plan's payment to any entity." (emphasis added)).

Plaintiff contends that Medicare has improperly sought to recover purported overpayments directly from him, rather than from the insurer of the driver of the vehicle that struck him. (Compl. at ¶¶ III.C, V.) The February 3, 2015 letter CMS sent to plaintiff stated explicitly, however, that it "IS NOT A BILL" and that plaintiff should "NOT SEND PAYMENT AT THIS TIME." (Abril Decl., Ex. A.) The letter merely explained that plaintiff "*may be required to reimburse Medicare* for medical expenses related to [his] . . . liability claim." (*Id.*) Further, the affidavit from CMS regional administrator Victoria Abril establishes that plaintiff has not received payment from a primary plan. (Abril Aff. at ¶¶ 6-12.) Abril affirms that "[u]nless and until there is a settlement, judgment, award or other payment demonstrating a primary payer's responsibility for Medicare conditional payments made for items or services provided to [plaintiff], CMS does not

have a recovery claim under the MSP Act with respect to [plaintiff's] liability claim." (*Id.* at ¶ 12.)

Medicare may eventually determine that a primary insurer is responsible for covering medical expenses related to plaintiff's injuries. In that case, it may seek reimbursement against the primary insurer or, if plaintiff has received a payment, against plaintiff himself. *See* 42 U.S.C. § 1395y(b)(2)(B)(iii). If a primary insurer directly reimburses Medicare for all of the purported overpayments, Medicare would not seek repayment from plaintiff himself. Alternatively, Medicare may determine that there was no overpayment. As the above hypotheticals illustrate, plaintiff's alleged injury is purely conjectural. *See Am. Elec. Power Co.*, 582 F.3d at 343 n.19. Because he "alleges only a potential for [injury] that has not yet occurred and because that potential is born of nothing more than hypothesis and conjecture," plaintiff lacks standing to sue. *Brito*, 521 F.3d at 168.[6]

---

[6] There is significant analytical overlap between the imminence requirement (in standing jurisprudence) and ripeness doctrine. *See Butler v. Obama*, 814 F. Supp. 2d 230, 242 n.8 (E.D.N.Y. 2011) ("It is well settled that, where the issue is whether the injury is imminent or immediate enough to confer standing, the ripeness and standing analysis converge and apply interchangeably."); *see also Driehaus*, 134 S. Ct. at 2341 n.5 ("As the parties acknowledge, the Article III standing and ripeness issues in this case boil down to the same question. . . . [W]e use the term 'standing' in this opinion." (internal quotation marks and citations omitted)); *Warth v. Seldin*, 422 U.S. 490, 499 n.10 (1975) ("The standing question thus bears close affinity to questions of ripeness — whether the harm asserted has matured sufficiently to warrant judicial intervention . . . ."); 13B Charles Alan Wright & Arthur R. Miller,

As noted above, on June 10, 2015, plaintiff received a nearly identical letter identifying additional conditional payments made by Medicare on plaintiff's behalf. (Abril Decl., Ex. B.) The June 10, 2015 letter, like the February 3, 2015 letter, provided that plaintiff "*may be required to reimburse Medicare*." (*Id.* (emphasis added)) It did not establish Medicare's right of recovery against plaintiff. Additionally, on June 27, 2016, defendant filed a letter with the court explaining that further conditional payments had been made by Medicare on plaintiff's behalf. (ECF No. 18.) The letter, however, explained: "HHS is not aware of any events at this time that would give rise to a claim for recovery against Plaintiff under the Medicare Act." (*Id.*) Even if events since the filing of the complaint had demonstrated Medicare's right to recover overpayments, plaintiff was obligated to establish his standing to sue at the outset of the litigation. *See Azim*, 530 F. App'x at 45 ("[S]tanding is to be determined as of the commencement of suit.").

Because the court lacks subject matter jurisdiction to hear plaintiff's claim against defendant, the court need not address defendant's alternative arguments. *See Mohamed v. U.S. Postal Serv.*, No. 08-CV-895, 2009 WL 2208578, at *1 (N.D.N.Y. July

---

*Federal Practice and Procedure* § 3532.1 (3d ed.). Defendant's briefing commingles ripeness and standing language. While ripeness would provide an analogous ground for dismissal of plaintiff's claim, the court uses the term "standing," as the Supreme Court did in *Driehaus*, 134 S. Ct. at 2341 n.5.

12

22, 2009) ("Because the court finds that it lacks jurisdiction over Plaintiff's claim it need not address the issue of proper service."); *In re JJF Associates LLC*, No. 01-CV-2624, 2001 WL 1512616, at *2 n.3 (S.D.N.Y. Nov. 28, 2001) ("Because I find that this Court lacks jurisdiction to consider this appeal . . . , I need not address the Creditors' remaining arguments in favor of dismissal.").

## CONCLUSION

For the foregoing reasons, plaintiff's complaint is dismissed with prejudice pursuant to Fed. R. Civ. P. 12(b)(1) for lack of jurisdiction. The Clerk of Court is respectfully directed to enter judgment in favor of defendant and close the case.

**SO ORDERED.**

Dated:   July 11, 2016
         Brooklyn, New York

_____/s/_____
**KIYO A. MATSUMOTO**
United States District Judge
Eastern District of New York

13